[No. D049861. Fourth Dist., Div. One. Mar. 12, 2008.]

GREAT WESTERN DRYWALL, INC., Plaintiff and Appellant, v. INTERSTATE FIRE & CASUALTY COMPANY, Defendant and Respondent.

1034

COUNSEL

Oliva & Associates, Joseph L. Oliva and Matthew L. Cookson for Plaintiff and Appellant.

Law Offices of Jerome M. Jackson, Jerome Mark Jackson and Doran B. Richart for Defendant and Respondent.

OPINION

McCONNELL, P. J.—Plaintiff Great Western Drywall, Inc. (Great Western), appeals a summary judgment for Interstate Fire & Casualty Company (Interstate), entered after the trial court determined Interstate owed Great Western no defense or indemnification in an underlying action. We disagree with Great Western's contention the trial court misinterpreted the insurance policy at issue and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Roel Construction Co., Inc. (Roel), was the general contractor on the Renaissance Marina condominium project in San Diego. In April 2001 Roel

and Great Western entered into a subcontract for Great Western to install drywall and perform other work on the project. The subcontract included a type I indemnity agreement, which required Great Western to indemnify Roel "from and against all claims, damages, losses and expenses . . . for personal injury, death, property damage or otherwise arising out of or resulting from [Great Western's] performance," unless the claim arose from Roel's sole negligence or willful misconduct. (See *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1276, fn. 7 [87 Cal.Rptr.2d 497].)

In September 2003 Great Western sued Roel over a payment dispute. Roel cross-complained against Great Western for breach of contract, negligence, "money due for work and materials," account stated, and money had and received. The cross-complaint alleged Roel overpaid Great Western under the subcontract, and Roel was required to hire other subcontractors to finish and correct Great Western's work after it abandoned the project. The cross-complaint also alleged that in the course of its work Great Western negligently caused property damage to other work on the project, specifically window glass and tubs.

Interstate insured Roel under a commercial general liability (CGL) policy, and as Roel's subcontractor, Great Western was a named insured. The policy covered "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' " arising from an " 'occurrence,' " which was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy provided, "We will have the right and duty to defend the insured against any 'suit' seeking those damages." The policy defined "suit" as "a civil proceeding in which [covered] damages . . . are alleged."

The policy also contained the following exclusion: "**CROSS SUITS EXCLUSION. [¶] THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**. [¶] This policy does not apply to any claim or suit for injury or damage by one **Insured** against another **Insured**. [¶] This exclusion does not apply to . . . *actions to apportion liability between Insured's* [*sic*] *where any Insured has been sued for a covered loss*." (Italics added; hereafter cross suits exclusion.)

Additionally, the policy contained an exclusion for bodily injury or property damage "for which the insured is obligated to pay damages by reason of

the assumption of liability in a contract or agreement." An exception to the exclusion provided, however, that the exclusion did not pertain to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract.' " The term "insured contract" was defined, in part, as the "part of any . . . contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Interstate concedes the subcontract between Roel and Great Western was an insured contract within the meaning of the CGL policy.

In May 2004 Great Western tendered the defense of Roel's cross-complaint to Interstate. A couple of months later Interstate issued a written denial of the tender, in part based on the cross-suits exclusion. After further requests for a defense, in March 2005 Interstate agreed to defend Great Western subject to a full reservation of rights. Interstate, however, did not actually provide a defense.

In November 2005 a bench trial was held in the underlying action. The court awarded Great Western $332,106 on its complaint against Roel, and awarded Roel $320,848 on its cross-complaint against Great Western, for a net recovery to Great Western of $11,258.

In February 2005 Great Western sued Interstate. In December 2005 Great Western filed a first amended complaint, which included causes of action for breach of contractual duties to defend and indemnify, and breach of the implied covenant of good faith and fair dealing. Great Western moved for summary adjudication, and Interstate moved for summary judgment. The court granted Interstate's motion, explaining there was no potential for coverage under the policy because of the cross-suits exclusion, and thus Interstate had no duty of defense or indemnification. The court found the exception to the cross-suits exclusion inapplicable because Roel's action against Great Western was not one to apportion liability between insureds, and "no [third party] suit was ever brought against Roel; rather, only a claim was asserted, which Roel settled." The court entered judgment for Interstate on October 27, 2006.

## DISCUSSION

### I

*Standard of Review*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to

judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) An "insurer is entitled to summary [judgment] that no potential for indemnity exists and thus no duty to defend exists if the evidence establishes as a matter of law that there is no coverage." (*Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 414 [79 Cal.Rptr.2d 52].)

We independently review the trial court's interpretation of the CGL policy and its granting of the summary judgment motion. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 641, 647 [3 Cal.Rptr.3d 228, 73 P.3d 1205].)

II

*Legal Principles*

A

" 'A liability insurer owes a duty to defend its insured when the claim creates any potential for indemnity. [Citation.] The determination of whether the duty to defend arises is made by comparing the terms of the policy with the allegations of the complaint and any known extrinsic facts, and any doubt as to whether the facts create a duty to defend is resolved in favor of the insured.' " (*Pacific Indemnity Co. v. Bellefonte Ins. Co.* (2000) 80 Cal.App.4th 1226, 1231 [95 Cal.Rptr.2d 911].)

"Breach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate." (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 831 [61 Cal.Rptr.2d 909].) The insurer, however, " 'need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168].)

B

■ " ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." ' " (*Stamm Theatres, Inc. v. Hartford Casualty Ins. Co.* (2001) 93 Cal.App.4th 531, 538 [113 Cal.Rptr.2d 300].) "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. '. . . Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

■ To afford the insured the greatest possible protection, coverage provisions are interpreted broadly and exclusionary clauses are interpreted narrowly against the insurer. (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 16; *MacKinnon v. Truck Ins. Exchange, supra,* 31 Cal.4th 635, 648.) "An exception to an exclusion is treated in the same manner as a coverage provision and therefore is interpreted broadly consistent with the insured's reasonable expectations." (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1463 [63 Cal.Rptr.3d 816].)

III

*Interpretation of the CGL Policy*

A

Great Western contends the court misinterpreted the CGL policy's exception to the cross-suits exclusion. Great Western asserts that although Roel cross-complained against it for breach of contract, and not indemnity or apportionment, the action was in substance for apportionment since it "was based on fault established against Great Western." Great Western cites *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828 [88 Cal.Rptr.2d 366, 982 P.2d 229], for the proposition that "when there is damage to property, the focus of the inquiry should be the nature of the risk or peril that caused the injury and the specific policy language, not the form of action brought by the injured party."

In *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419 [261 Cal.Rptr. 626], this court explained: "[T]he doctrine of comparative equitable indemnity is designed to do equity among defendants. Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be 'equitable *sharing* of loss between multiple tortfeasors.' [Citation.] The purpose of equitable indemnification is to avoid the unfairness, under joint and several liability theory, of holding one defendant liable for the plaintiff's entire loss while allowing another responsible defendant to escape ' "scot free." ' [Citation.] It is an extension of the comparative fault doctrine which allowed loss to be apportioned between plaintiff and defendants according to their respective responsibility for the loss." (*Id.* at pp. 426–427.) " '[C]omparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity. Total indemnification is just one end of the spectrum of comparative equitable indemnification.' " (*Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 808 [251 Cal.Rptr. 202, 760 P.2d 399].)

"The right to indemnity flows from payment of a joint legal obligation on another's behalf. [Citations.] The elements of a cause of action for indemnity are (1) a showing of *fault* on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." (*Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.* (2001) 86 Cal.App.4th 1135, 1139 [103 Cal.Rptr.2d 895].) In an indemnity action, the trier of fact must determine whether the indemnitee was held legally responsible for damages to a third party, whether the indemnitor's conduct was a substantial factor in causing the harm, and if so, the indemnitee's and indemnitor's percentages of responsibility. (Judicial Council of Cal. Civ. Jury Instns. (2008) CACI No. 3800.)

We conclude Roel's cross-complaint cannot fairly be characterized as an action for indemnity or apportionment, and thus the trial court correctly determined the exception to the cross-suits exception was inapplicable. The cross-complaint alleged Roel overpaid Great Western $34,250 under the subcontract, and Great Western abandoned the job before completion and without correcting defective work, which caused Roel to incur costs that Great Western should have borne. The cross-complaint does not indicate these allegations pertain to any third party property damage.

The cross-complaint also alleged that during the course of Great Western's work it negligently damaged window glass and tubs on the project, and as a result Roel was required to pay at least $144,924 for repairs. The

cross-complaint, however, did not allege Roel was held legally responsible for damages to any third party, and it is undisputed that Roel voluntarily settled third party claims before any suit was filed.

■ The policy exception here provides the cross-suits exclusion is inapplicable "to . . . actions to apportion liability between **Insured's** [*sic*] where *any **Insured** has been sued for a covered loss*." (Italics added.) Great Western asserts the italicized language is satisfied because it is "any insured" under the CGL policy and Roel sued it for covered property damage. The phrase "has been sued," however, obviously pertains to a third party suit, or the exclusion would be nonsensical. The term "action[]" in the exclusion pertains to a cross-suit for apportionment, and under Great Western's theory, the phrase "has been sued" pertains to the same cross-suit for apportionment. In other words, Great Western's interpretation renders the phrase "where any **Insured** has been sued for a covered loss" superfluous in the context here. "[I]n construing an insurance agreement we must avoid interpretations that would create redundancy in policy language." (*Carmel Development Co. v. RLI Ins. Co.* (2005) 126 Cal.App.4th 502, 511 [24 Cal.Rptr.3d 588]; see *Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1073 [34 Cal.Rptr.3d 136].) Because Roel's cross-complaint against Great Western was not preceded by a third party suit, there was no liability.[1]

■ Great Western asserts Interstate could have drafted the exception to read, " 'This exclusion does not apply . . . to apportion liability between Insureds only when any Insured has been sued **by a third party** for a covered loss.' " Perhaps that would promote clarity, but " 'the fact that language could be more explicit does not render it ambiguous.' " (*California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682, 1694 [56 Cal.Rptr.2d 434].)

B

Alternatively, Great Western submits that even if we find the exception to the cross-suits exclusion inapplicable, we should interpret the policy in favor of coverage. Great Western asserts the CGL policy is ambiguous because it covered Great Western's indemnity liability to Roel under the subcontract,

---

[1] Without citing any particular page of the opinion, Great Western relies on *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857 [77 Cal.Rptr.2d 107, 959 P.2d 265] (*Foster-Gardner*), for the proposition that "a lawsuit filed against an insured qualifies for coverage" under a general liability policy. *Foster-Gardner* is unhelpful because it does not concern apportionment, a cross-suits exclusion, or an exception thereto. The court there held that "a reasonable construction of the word 'suit' is a lawsuit" by a third party (*id.* at p. 879), and the duty of defense is not triggered unless a suit is filed. (*Id.* at p. 882.)

but then abrogated the coverage under the cross-suits exclusion.[2] Great Western points out that the subcontract required it to indemnify Roel against any "claims" for property damage, and no third party "suit" against Roel was required to trigger the indemnity clause.

■ We are, however, interpreting the CGL policy's coverage provisions, which is an entirely separate contract from the subcontract. (See *American Casualty Co. v. General Star Indemnity Co.* (2005) 125 Cal.App.4th 1510, 1524 [24 Cal.Rptr.3d 34].) The policy's insuring provision requires a third party suit to trigger the defense duty, and under the exception to the cross-suits exclusion, an indemnity action between insureds would trigger the defense duty only when the plaintiff had been sued by a third party. The policy language controls, not the subcontract language. (*Ibid.*) Ambiguity exists "when an insurance policy provision is susceptible to two or more constructions that are reasonable and not based on strained interpretations." (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 737 [15 Cal.Rptr.2d 815].) The policy is not reasonably susceptible to the interpretation that no third party suit was required to trigger the duties of defense and indemnity. Rather, the policy requires that a third party lawsuit fix the amount of damages to which its insured is legally liable. Further, given the policy language, we disagree that Great Western reasonably expected contractual coverage without any underlying third party suit having been filed against Roel.

■ Great Western further submits that since it had no control over Roel's decision to voluntarily repair third party property damage to avoid a lawsuit, the denial of coverage for Roel's claims against it renders the CGL policy illusory. We cannot, however, ignore the cross-suits exclusion or the inapplicability of the exception thereto. " '[W]e do not rewrite any provision of any contract, [including an insurance policy], for any purpose.' " (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1073 [135 Cal.Rptr.2d 361, 70 P.3d 351], quoting *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 968 [103 Cal.Rptr.2d 672, 16 P.3d 94].)

■ Because the CGL policy afforded no coverage for Great Western for the claims set forth in Roel's cross-complaint, and thus did not trigger the defense duty, as a matter of law Interstate cannot be liable for breach of contract or breach of the implied covenant of good faith and fair dealing. Accordingly, summary judgment for Interstate was proper.

---

[2] We asked the parties for supplemental briefing on this issue, and we have taken their responses into consideration.

## DISPOSITION

The judgment is affirmed. Interstate is entitled to costs on appeal.

Nares, J., and Irion, J., concurred.