RESIDENCE MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

TRAVELERS INDEMNITY COMPA-
NY OF CONNECTICUT and
Does 1–10, Defendants.

No. CV 13–09141–RSWL (AGRx).

United States District Court,
C.D. California.

Signed June 13, 2014.

Laura Jean Becker, Timothy Dennis Lake, Tharpe & Howell LLP, Sherman Oaks, CA, for Plaintiff.

Bruce Daniel Celebrezze, Erin Ann Cornell, Michael A. Topp, Sedgwick LLP, San Francisco, CA, for Defendants.

**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [18] AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT [20]**

RONALD S.W. LEW, Senior District Judge.

Currently before the Court are Plaintiff Residence Mutual Insurance Company's ("Plaintiff") Motion for Summary Judgment [18] and Defendant Travelers Indemnity Company of Connecticut's ("Defendant") Cross–Motion for Summary Judgment [20]. The Court, having reviewed all papers submitted pertaining to these Motions, **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS in part, DENIES in part** Plaintiff's Motion for Summary Judgment and **GRANTS in part, DENIES in part** Defendant's Cross–Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff issued a Homeowners Policy to Michael H. Chu and Susan Chu as the named insureds ("Plaintiff's Policy"). Pl.'s Statement of Uncontroverted Facts and Conclusions of Law ("Pl.'s SUF") # 1.

Defendant issued a Commercial General Liability policy to Daeil America Corporation, dba Temeku Hills Golf and Country ("Temeku Hills") as the named insured ("Defendant's Policy"). *Id.* at # 2. Mrs. Chu, as a renter or operator of a golf cart at Temeku Hills, was made an additional insured of Defendant's Policy by the Golf or Country Club Facilities Xtend Endorsement ("Country Club Endorsement"). *See id.* at # 3.

On or about February 18, 2011, Mrs. Chu was driving a golfmobile at Temeku Hills when she allegedly struck and injured Maria Haugh with a golfmobile ("the Golfmobile Accident"). *Id.* at # 4. As a result of the Golfmobile Accident, Maria Haugh filed an action for bodily injury against Mrs. Chu ("Underlying Action"). *Id.* at # 5. Mrs. Chu tendered defense of the Underlying Action to Plaintiff, and Plaintiff agreed to provide a defense and indemnity to Mrs. Chu under Plaintiff's Policy. *Id.* at # 6.

Plaintiff requested that Defendant participate in the defense and indemnity of Mrs. Chu with respect to the Underlying Action, asserting that Defendant provided coverage to Mrs. Chu as a person legally responsible for the use of a golfmobile she rented from Temeku Hills. *Id.* at # 10. Defendant rejected said request and refused to participate in the defense of Mrs. Chu. *Id.* at # 11. However, Defendant paid $100,000 towards the settlement of the Underlying Action. *Id.* at # 20. Plaintiff also paid $100,000 toward the settlement while reserving the right to seek equitable contribution from Defendant in this Action. *Id.* On February 7, 2014, the Underlying Action was settled for $200,000 and is in the process of being dismissed against Mrs. Chu. *Id.* at # 9.

Plaintiff alleges that Defendant must participate in the defense and indemnity of Mrs. Chu as an insurer with respect to the Underlying Action on a pro rata basis according to the respective liability limits of the respective policies. Compl. ¶ 21(a). Plaintiff's Policy has a Personal Liability Limit of $300,000. Pl.'s SUF # 14. Defendant's Policy has a General Liability Each Occurrence Limit of $1,000,000. *Id.* at # 15.

Plaintiff also alleges that Defendant must reimburse Plaintiff for amounts Plaintiff has expended defending Mrs. Chu in the Underlying Action in excess of the amount of the equitable share Plaintiff was required to pay. Compl. ¶ 21(b).

Plaintiff paid all of Mrs. Chu's defense costs—$11,500—incurred in the Underlying Action. Pl.'s SUF # 7. Plaintiff contends that the amount it paid in defense costs is in excess of $2,645.00—what Plaintiff believes is its equitable pro rata share for defense costs. *Id.* Plaintiff also alleges that it paid $100,000 to settle the Underlying Action, which is in excess of $46,000—what Plaintiff believes is its equitable pro rata share for settlement costs. *Id.* at # 8.

Defendant removed this Action from Los Angeles Superior Court to this Court on December 11, 2013 [1]. On March 19, 2014, Plaintiff filed its Motion for Summary Judgment [18]. On April 2, 2014, Defendant filed its Opposition to Plaintiff's Motion for Summary Judgment and also filed a Cross–Motion for Summary Judgment [20]. Plaintiff filed a Reply in support of its Motion for Summary Judgment on April 9, 2014 [23] and an Opposition to Defendant's Cross–Motion for Summary Judgment on April 16, 2014 [24]. Defendant filed a Reply in support of its Cross–Motion for Summary Judgment on April 23, 2014[ 25].

Plaintiff presently moves for summary judgment on its two claims for declaratory relief and equitable contribution. Specifically, Plaintiff seeks an order that (1) Defendant must participate in the defense and indemnity of Mrs. Chu with Plaintiff and share the costs on a pro rata basis and (2) Plaintiff is entitled to equitable contribution from Defendant with respect to the defense and indemnity costs Plaintiff incurred as to the Underlying Action.

Defendant also presently moves for summary judgment. As to Plaintiff's first cause of action for declaratory relief, Defendant moves for summary judgment declaring that Defendant had no obligation to defend Mrs. Chu or to pay any portion of the $200,000 settlement in the Underlying Action. Defendant requests that the Court order Plaintiff to reimburse Defendant for the $100,000 that Defendant paid to fund the settlement. As to Plaintiff's second cause of action for equitable contribution, Defendant moves for summary judgment declaring that Defendant has no legal or equitable obligation to contribute to Plaintiff for the defense and indemnity of the Underlying Action. Alternatively, if the Court determines that the Parties are obligated to share the loss, Defendant maintains that the cost of defending and settling the Underlying Action should be shared equally rather than allocating the loss according to the ratio of policy limits. Cross–Mot. 1:23–28.

The hearing for Plaintiff's Motion for Summary Judgment was originally set for April 23, 2014, but the Court continued the hearing for Plaintiff's Motion for Summary Judgment to be heard with Defendant's Cross–Motion for Summary Judgment [21]. Both motions were set for hearing on May 7, 2014 and were taken under submission on May 2, 2014 [26].

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. *Twentieth Century–Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The non-moving party, on the other hand, is required by Fed.R.Civ.P. 56(c) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993). A nonmoving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. ANALYSIS

### A. *Request for Judicial Notice*

Defendant requests that the Court take judicial notice of District Judge J. Owen Forrester's April 22, 2013 order granting the Phoenix Insurance Company's motion for summary judgment and denying Nationwide Property and Casualty Insurance Company's motion for summary judgment, filed in the matter *The Phoenix Ins. Co. v. Nationwide Prop. and Cas. Ins. Co.,* No. 1:12–cv00660–JOF, in the United States District Court for the Northern District of Georgia. Request for Judicial Notice, Ex. A.

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir.2001). Further, a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). A fact is appropriate for judicial notice only if it is not subject to reasonable dispute because it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b).

■ Facts contained in the public record are appropriate subjects of judicial notice. *Peel v. BrooksAmerica Mortg. Corp.,* 788 F.Supp.2d 1149, 1157–58 (C.D.Cal.2011) (citing *Lee,* 250 F.3d at 690). Therefore, a court may take judicial notice of the existence of another court's opinion or of the filing of pleadings in related proceedings. *Peel,* 788 F.Supp.2d at 1158.

The Court finds that it has been provided with the necessary information regarding this document. Because the document is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, this Court **GRANTS** Defendant's Request for Judicial Notice.

### B. *Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment*

#### 1. *Interpretation of Insurance Contracts*

■ Under California law, "the interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.,* 40 Cal.4th 19,

27, 50 Cal.Rptr.3d 597, 145 P.3d 472 (2006) (citations omitted). Words in an insurance policy must be read in their plain and ordinary sense and ambiguity cannot be based on a strained rather than reasonable interpretation of the policy's terms. *McKee v. State Farm Fire & Cas., Co.*, 145 Cal.App.3d 772, 776, 193 Cal.Rptr. 745 (1983) (citations omitted).

■ "Contractual terms of insurance coverage are honored whenever possible. The courts will therefore generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue." *Fin. Pac. Ins. Co. v. Amco Ins. Co.*, No. 2:05–cv–2099–GEB–CMK, 2007 WL 685856, at *2 (E.D.Cal. Mar. 5, 2007) (citing *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App.4th 1279, 1304, 77 Cal.Rptr.2d 296 (1998)).

■■ However, there are many exceptions to this general rule. *Travelers Cas. & Sur. Co. v. Am. Equity Ins. Co.*, 93 Cal.App.4th 1142, 1149–50, 113 Cal.Rptr.2d 613 (2001). For example, where two or more primary insurers' policies contain excess "other insurance" clauses, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection. *Id.* (citing *Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co.*, 126 Cal.App.3d 593, 599, 178 Cal.Rptr. 908 (1981)). Thus, although a true excess insurer has no duty to defend or indemnify until the underlying primary coverage is exhausted, primary insurers with conflicting excess "other insurance" clauses can have immediate defense obligations. *Id.* at 1149–50, 113 Cal.Rptr.2d 613.

### 2. *Plaintiff and Defendant Cover the Same Level of Liability on the Same Risk as to the Same Insured*

A primary insurer generally has a duty to defend its insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Lawyers Mut. Ins. Co.*, 885 F.Supp. 202, 205 (S.D.Cal.1995) (citing *Olympic Ins. Co.*, 126 Cal.App.3d at 597, 178 Cal.Rptr. 908). In contrast, however, an excess insurer generally has no duty to participate in the insured's defense or contribute to a settlement on the insured's behalf until primary coverage has been exhausted. *Id.* (citing *Nabisco, Inc. v. Transp. Indem. Co.*, 143 Cal.App.3d 831, 836, 192 Cal.Rptr. 207 (1983)).

■ "When two insurers cover the same level of liability (e.g., both primary or both excess) on the same risk as to the same insured, courts may require each to contribute to the cost of defending the claim or indemnifying the loss." *Carmel Dev. Co. v. RLI Ins. Co.*, 126 Cal.App.4th 502, 507–08, 24 Cal.Rptr.3d 588 (2005) (citing *Md. Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal.App.4th 1082, 1089, 97 Cal. Rptr.2d 374 (2000)). "The right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others . . . ." *Id.* (quoting *Fireman's Fund*, 65 Cal.App.4th at 1293, 77 Cal.Rptr.2d 296).

■ Thus, the Court must first address whether both Plaintiff and Defendant provide the same level of coverage to their mutual insured. *See id.* at 509, 24 Cal.Rptr.3d 588. "This question requires a broader examination of each policy to ascertain the context in which the 'other insurance' provisions appeared." *Id.* Only if the two policies were insuring the same risk at the same level of coverage should the court proceed to determine whether the "other insurance" clauses conflict and thus require equitable proration. *Id.* (cit-

ing *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal.App.4th 1063, 1077, 85 Cal.Rptr.2d 627 (1999)):

■ Here, Plaintiff issued a Homeowners Policy to Mr. and Mrs. Chu as the named insureds. Pl.'s SUF # 1; Carande Decl. ¶ 15, Ex. A. Plaintiff provided primary coverage to Mrs. Chu. *See* Dkt. # 18–7. However, under "Section II—Conditions, Paragraph 8, Other Insurance, Coverage E—Personal Liability," Plaintiff's Policy contains an "other insurance" provision that states "[t]his insurance is excess over any other valid and collectible insurance . . . ." *Id.*

Defendant issued a Commercial General Liability policy to Temeku Hills as the named insured that was in full force and effect on the date of the Golfmobile Accident. Pl.'s SUF # 2. Further, "Section IV—Commercial Liability Conditions, Paragraph 4, Other Insurance" of Defendant's Policy states that the insurance is primary, and that if other valid and collectible insurance is available to the insured for a loss covered by Defendant's Policy, Defendant will share with that insurance according to the equal shares method, if applicable. Dkt. # 18–8 at p. 26.

Defendant's Policy also contains a "Country Club Endorsement," which states, in relevant part:

**B. ADDITIONAL INSURED—GOLF PROS; TENNIS PROS; MEMBERS; USERS OF GOLFMOBILES (EXCESS BASIS)**

1. WHO IS AN INSURED (Section II) is amended to include as an insured:

   d. Any person or organization using or legally responsible for the use of golfmobiles loaned or rented to others by you or your concessionaires, but only with respect to

their liability caused by the use of the golfmobiles.

Dkt. # 18–8 at p. 41–42.

Mrs. Chu was a guest at Temeku Hills and was operating a golfmobile at the time of the Golfmobile Accident. Pursuant to the terms of Defendant's Policy, Mrs. Chu was made an additional insured of Defendant's Policy by the Country Club Endorsement. *Id.*

Defendant points out that the Country Club Endorsement states on its face that Paragraph 4 is amended to provide that: "[t]his insurance for any person using or legally responsible for the use of a golfmobile is excess over any other insurance, whether primary, excess, contingent, or on any other basis that provides coverage to the user of a golfmobile." Thus, Defendant argues that coverage for a golfmobile user as an "additional insured" under Defendant's Policy is only provided on an *excess* basis and can never be primary. Def.'s Reply 3:3–18. In other words, Defendant argues that it provides only *secondary coverage* for golf cart users such as Mrs. Chu.

Plaintiff argues, on the other hand, that as additional insureds, guests of the golf club, including Mrs. Chu, were afforded primary insurance in the same manner as the named insured of the policy. Pl.'s Reply 5:13–14.

■ On balance, the Court finds that Plaintiff and Defendant both afford primary coverage to Mrs. Chu. There is a distinction between primary and excess insurance coverage. *Am. Cas. Co. v. Gen. Star Indem. Co.*, 125 Cal.App.4th 1510, 1521, 24 Cal.Rptr.3d 34 (2005). As explained in *American Casualty:*

> *Primary* coverage is insurance coverage whereby, *under the terms of the policy,* liability attaches *immediately* upon the happening of the occurrence that gives

rise to the liability ... *"excess"* or *"secondary"* insurance is coverage whereby, *under the terms of the policy,* liability attaches only after a predetermined amount of primary coverage has been exhausted.

*Id.* (citing *Olympic Ins. Co.,* 126 Cal. App.3d at 597–98, 178 Cal.Rptr. 908). "Excess" insurance is *"secondary* insurance which provides coverage after other *identified* insurance is no longer on the risk." *Id.* "The identification of the underlying primary insurance may be as to (1) a particular policy or policies that are specifically described or (2) underlying coverage provided by a particular and specifically described insurer." *Id.* (citing *Century Sur. Co. v. United Pac. Ins. Co.,* 109 Cal. App.4th 1246, 1255, 135 Cal.Rptr.2d 879 (2003)). "In short, excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage." *Id.*

Here, the Court finds that Defendant's Policy affords primary coverage to Mrs. Chu. Under "Section IV—Commercial General Liability Conditions, Paragraph 4, Other Insurance," Defendant's Policy states that the insurance is primary. Dkt. # 18–8 at p. 26. Further, contrary to Defendant's argument, the fact that Defendant included: **"USERS OF GOLF-MOBILES (EXCESS BASIS)"** in the heading for "additional insureds" in the Country Club Endorsement does not, by itself, transform otherwise primary coverage afforded to Mrs. Chu to excess coverage. *See Mt. McKinley Ins. Co. v. Swiss Reinsurance Am. Corp.,* 757 F.Supp.2d 952, 957 (N.D.Cal.2010) (noting that the "excess general liability" label on the policies did not make a defendant an excess insurer, because this label did not explain of what insurance the defendant's policies were to be considered "excess").

Defendant's Policy as to Mrs. Chu is also not a true "excess only" policy under California law because there is nothing in Defendant's Policy that states it is excess to a particular policy that is specifically described or excess to underlying coverage provided by a particular and specifically described insurer. Nothing in Defendant's Policy states that the coverage afforded to users of golfmobiles was excess over any specifically identified underlying insurance. *See* Pl.'s SUF ## 27–28. In other words, there is no language in Defendant's Policy indicating any underlying insurance to which Defendant's Policy was excess over for users of golfmobiles. Because Defendant's Policy does not identify any underlying coverage provided by a particular and specifically described primary insurer, Defendant's Policy is not "true" excess coverage.

Further, the "other insurance" language in the Country Club Endorsement with regard to coverage for golfmobile users does not change the primary coverage afforded to Mrs. Chu to "excess only" coverage. The Country Club Endorsement states:

> This insurance for any person or organization using or legally responsible for the use of a golfmobile is excess over any other insurance, whether primary, excess, contingent, or on any other basis that provides coverage to the user of a golfmobile.

Dkt. # 18–8 at p. 42.

The inclusion of an "other insurance" clause in an otherwise primary policy will not convert a primary policy into "true" excess coverage. *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.,* 258 F.3d 1090, 1093 (9th Cir.2001). In *Century Surety,* four primary insurers insured a mutual insured. 109 Cal.App.4th at 1250, 135 Cal.Rptr.2d

879. One primary insurer, Century, refused to provide a defense because its policy contained an "other insurance" clause stating that "[i]f other valid and collectible insurance is available to any insured . . . then this insurance is excess of such insurance. . . ." *Id.* at 1252, 135 Cal. Rptr.2d 879. The court noted that "excess" insurance is secondary insurance that provides coverage after other identified insurance is no longer on the risk. *Id.* at 1255, 135 Cal.Rptr.2d 879. The court further noted that the type of insurance that Century provided was not "excess" insurance. *Id.* Thus, the court held that the excess insurance provision did not render the policy true "excess" coverage and compelled an equitable proration among all four insurers. *Id.* at 1256–57, 135 Cal. Rptr.2d 879.

Here, as Plaintiff correctly argues, Defendant's "other insurance" provision did not convert Defendant's otherwise primary policy to "excess" coverage; rather, it merely added a different "other insurance" provision applicable to the primary coverage otherwise provided to users of golfmobiles.[1] As noted above, "excess insurance is insurance that is expressly understood by both the insurer and the insured to be secondary to *specific* underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage." *Am. Cas. Co.,* 125 Cal.App.4th at 1521, 24 Cal.Rptr.3d 34. Because nothing in Defendant's Policy states that the coverage afforded to users of golfmobiles was excess over any *specifically identified* underlying insurance, Defendant's Policy affords primary insurance to Mrs. Chu.

Based on the foregoing, the Court finds that Plaintiff and Defendant both provide primary coverage to Mrs. Chu. Because Plaintiff and Defendant both insure the same risk at the same level of coverage, the Court now turns to next question: whether the "other insurance" clauses in Plaintiff's and Defendant's Policies conflict. *See Carmel,* 126 Cal.App.4th at 509, 24 Cal.Rptr.3d 588.

### 3. The "Other Insurance" Provisions Conflict

"The 'excess' insurance problem . . . arises when one insurer attempts, through the use of a so-called 'other insurance' clause, to reduce a primary coverage obligation into a more limited excess liability." *Century Surety,* 109 Cal.App.4th at

---

1. Defendant points the Court to *Phoenix Ins. Co. v. Nationwide Prop. and Cas. Ins. Co.* in which a court held that the language of a Country Club Endorsement specifically provided that any coverage for golf cart use is on an "excess" basis. RJN, Ex. A, p. 8. Based on this language, the court held that the Country Club Endorsement was written to provide excess, and not primary coverage to golf cart drivers. *Id.* at p. 9. Thus, the court held that the Phoenix Country Club Endorsement was "true excess" coverage, while the two Nationwide policies provided "primary coverage" in these circumstances. *Id.* at p. 9. However, the Court finds this authority unpersuasive. First, the Court notes that this case applies Georgia law and is not binding on this Court. Additionally, as stated in *Century Surety,* excess insurance is that which, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted and must provide coverage to specifically *identified* primary insurance. 109 Cal.App.4th at 1255, 135 Cal. Rptr.2d 879; *see also Fireman's Fund,* 65 Cal.App.4th at 1304, 77 Cal.Rptr.2d 296. Here, the Country Club Endorsement and coverage grants contain no language specifically identifying any primary insurance to which it is excess. Further, as stated above, the inclusion of "**USERS OF GOLFMOBILES (EXCESS BASIS)**" in the heading for "additional insureds" in the Country Club Endorsement does not, by itself, transform otherwise primary coverage afforded to Mrs. Chu to excess coverage. *See Mt. McKinley,* 757 F.Supp.2d at 957.

1255, 135 Cal.Rptr.2d 879. "Insurance policies commonly include 'other insurance' provisions which 'attempt to limit the insurer's liability to the extent that other insurance covers the same risk.'" *Id.* There are three subcategories of "other insurance" provisions. One subcategory, "pro rata" provisions, limit the insurer's liability to "the total proportion that its policy limits bear to the total coverage available to the insured." *Id.* Another subcategory, known as "excess only" clauses, require the exhaustion of other insurance; in effect, this insurer does not provide primary coverage but only acts as an excess insurer. *Id.* A final subcategory of "escape" clauses extinguishes the insurer's liability if the loss is covered by other insurance. *Id.* at 1255–56, 135 Cal.Rptr.2d 879. "When 'excess only' clauses are found in primary liability policies, they are treated the same way as escape clauses." *Id.* at 1256, 135 Cal.Rptr.2d 879.

"Where two or more primary insurers' policies contain excess 'other insurance' clauses purporting to be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection." *Id.* at 1257, 135 Cal.Rptr.2d 879; *Olympic Ins.*, 126 Cal.App.3d at 599, 178 Cal.Rptr. 908. Thus, although a true excess insurer—one that is solely and explicitly an excess insurer providing only secondary coverage—has no duty to defend or indemnify until all the underlying primary coverage is exhausted or otherwise not on the risk, primary insurers with conflicting excess "other insurance" clauses can have immediate defense obligations. *Id.*

▪ Here, Plaintiff's Policy has a traditional excess "other insurance" provision. This provision states that "this insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy." Dkt. # 18–7 at p. 17. Defendant's Policy has an "other insurance" provision that states that "this insurance for any person ... using ... a golfmobile is excess over any other insurance, whether primary, excess, contingent or on any other basis that provides coverage to the user of a golfmobile." Dkt. # 18–8 at p. 42.

In *Fireman's Fund,* two insurance companies, Maryland and Fireman's Fund, issued several one year liability insurance policies to a mutual insured. 65 Cal. App.4th at 1287, 77 Cal.Rptr.2d 296. Each of the policies of both insurers contained an "other insurance" clause. *Id.* at 1303, 77 Cal.Rptr.2d 296. However, four of the policies issued by Fireman's Fund contained an "excess other insurance" clause that stated "[t]his insurance is excess over any other insurance, whether primary or excess, contingent or on any other basis ... [t]hat is valid and collectible insurance...." *Id.* The four earlier Fireman's Fund insurance policies, and all of Maryland's policies, contained "other insurance" clauses providing for *pro rata* computation of loss allocation among insurers, as opposed to excess coverage. *Id.* The court held that, notwithstanding Fireman's Fund's excess "other insurance" provision, Fireman's Fund was contractually obligated to undertake its insured's defense. *Id.* at 1306–07, 77 Cal.Rptr.2d 296. "The court reasoned that "excess-only" provisions in otherwise primary liability insurance policies have been analogized to ... 'escape' clauses whereby coverage purports to disappear in the presence of other insurance." *Id.* at 1305, 77 Cal.Rptr.2d 296. The court also recognized that where two or more primary insurers' policies contain excess "other insurance" clauses purporting to be excess to each other, the conflicting clauses will be ignored and the

loss prorated among the insurers on the ground that the insured would otherwise be deprived of protection. *Id.* at 1304–05, 77 Cal.Rptr.2d 296.

Similarly here, the respective "other insurance" provisions of Defendant's and Plaintiff's policies conflict because they both declare the coverage to be "excess only" to any other coverage available to Mrs. Chu. If both provisions were given effect, Mrs. Chu would be left with no liability coverage from either insurer. In such a situation, the Court must ignore the conflicting clauses and allocate costs between the Parties.

The facts here are distinguishable from those in *Carmel,* in which the court held that RLI, an insurance company, was not obligated to contribute to the settlement on an equal basis with Fireman's Fund, because the insuring agreement in the RLI policy made it excess to the coverage that Fireman's Fund provided. 126 Cal. App.4th at 506, 24 Cal.Rptr.3d 588. In *Carmel,* Fireman's Fund argued that it and RLI were both excess insurers, whose policies contained irreconcilable "other insurance" clauses, while RLI maintained that its policy was "second level excess," which applied "only when all other insurance exhausts, including the Fireman's Fund policy." *Id.* at 507, 24 Cal.Rptr.3d 588. In finding in favor of RLI, the court reasoned that Fireman's Fund undertook to provide coverage upon exhaustion of *only* the primary insurer's policy limits, while RLI's insuring agreement obligated itself to step in only when the limits of *both* the primary policy and *all other available* coverage—primary and excess— were exceeded. *Id.* at 511, 24 Cal.Rptr.3d 588.

Here, unlike in *Carmel,* both Plaintiff's and Defendant's "other insurance" provisions contain *broad* language, obligating Plaintiff to provide coverage upon exhaustion of "any other valid and collectible insurance," (Carande Decl. ¶ 15, Ex. A), and obligating Defendant to provide coverage upon exhaustion of "any other insurance, whether primary, excess, contingent or on any other basis that provides coverage to the user of a golfmobile." (Lake Decl. ¶ 8, Ex. B). Where, as here, the provisions are broad, contain conflicting language, and purport to leave the mutual insured without any liability coverage from either insurer, the Court ignores the conflicting excess "other insurance" clauses and apportions the loss among the insurers. *See Fireman's Fund,* 65 Cal.App.4th at 1304–05, 77 Cal.Rptr.2d 296.

Because Plaintiff and Defendant are both primary insurers whose respective "other insurance" provisions conflict, the Court finds that Defendant has an obligation to participate in the defense and indemnity of the Underlying Action. Thus, the Court **GRANTS in part** Plaintiff's Motion for Summary Judgment to the extent that Plaintiff requests that the Court (1) find that Defendant must immediately participate in the defense and indemnity of Mrs. Chu as an insurer with respect to the Underlying Action and (2) require Defendant to reimburse Plaintiff for amounts Plaintiff expended to defend Mrs. Chu in the Underlying Action in excess of the amount of Plaintiff's equitable share. Because the Court finds that Defendant must participate in the defense and indemnity of Mrs. Chu and is required to reimburse Plaintiff for defense costs, the Court **DENIES in part** Defendant's Cross–Motion for Summary Judgment to the extent Defendant requests that the Court make a finding that Defendant has no obligation to share with Plaintiff the cost of defending Mrs. Chu and in settling the Underlying Action.

The Court now turns to the third issue—how to apportion the costs incurred

in defending Mrs. Chu and settling the Underlying Action.

### 4. *Equitable Contribution*

■ "The doctrine of equitable contribution grants an insurer that has paid a claim the right to recover from a co-insurer, where both insurers were obliged to indemnify or defend the claim, and where the co-insurer did not share, or did not sufficiently share, in covering the claim." *Mt. McKinley,* 757 F.Supp.2d at 956 (citing *Fireman's Fund,* 65 Cal.App.4th at 1293, 77 Cal.Rptr.2d 296). "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by co-insurers, and to prevent one insurer from profiting at the expense of others." *Id.* (quoting *Fireman's Fund,* 65 Cal.App.4th at 1279, 77 Cal. Rptr.2d 296).

■ Here, the Underlying Action was settled for $200,000. Pl.'s SUF # 9. Plaintiff and Defendant each paid $100,000 toward the settlement. *Id.* at # 20. Plaintiff also paid all of Ms. Chu's defense costs, which was $11,500. *Id.* at # 7. Plaintiff requests that the Court allocate costs between Plaintiff and Defendant based upon the relative policy limits of each primary policy. Plaintiff's Policy has a Personal Liability limit of $300,000 (*Id.* at # 14) and Defendant's Policy has a General Liability Each Occurrence Limit of $1,000,000 (*Id.* at # 15). Under this approach, Plaintiff argues that Defendant should have contributed $154,000 and Plaintiff should have contributed $46,000 to settle the Underlying Action. Plaintiff also argues that Defendant should have contributed $8,855 and Plaintiff should have contributed $2,645 of the total defense costs. The total amount sought by Plaintiff from Defendant in this Action is $62,855. *Id.* at # 26.

Defendant's Policy has a General Liability Each Occurrence Limit of $1,000,000

(*Id.* at # 15). Under this approach, Plaintiff argues that Defendant should have contributed $154,000 and Plaintiff should have contributed $46,000 to settle the Underlying Action. Plaintiff also argues that Defendant should have contributed $8,855 and Plaintiff should have contributed $2,645 of the total defense costs. The total amount sought by Plaintiff from Defendant in this Action is $62,855. *Id.* at # 26.

Defendant, on the other hand, asks the Court to use the "equal shares" method and apportion between each carrier in equal shares. Under this method, Defendant would be required to pay $100,000, the amount it had already contributed to settle the Underlying Action, plus $5,750 in defense costs.

On balance, the Court apportions on an equal shares basis. Plaintiff argues that in cases involving a conflicting "excess" type "other insurance" clause and an "escape" clause, California courts have ordered the insurers to share pro rata by limits. Reply 10:4–8. Plaintiff cites to *Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.,* 75 Cal.App.4th 739, 744, 89 Cal.Rptr.2d 415 (1999) to support the proposition that in all cases of conflict between "excess only" and "escape" clauses, the indemnity and defense costs should be prorated according to the policy limits. However, the court in *Commerce* did not firmly state that pro rata allocation was mandated in all situations involving two conflicting "other insurance" provisions. Rather, the court in *Commerce* considered the facts of the case and applied the result that "most accurately reflected the equities." 75 Cal. App.4th at 749, 89 Cal.Rptr.2d 415.

■ Further, Plaintiff argues that in cases involving conflicting "excess" type "other insurance" clauses, California courts have ordered the insurers to share pro rata by limits. However, in such

cases, courts are not necessarily required to share pro rata by limits. Rather, "[w]hen a trial court is required to evaluate claims for equitable contribution among multiple liability insurers, each insuring the same insured on the same claim, the trial court exercises its discretion and weighs the equities seeking to attain distributive justice and equity among the mutually liable insurers." *Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.,* 204 Cal.App.4th 1214, 1231, 139 Cal.Rptr.3d 578 (2012) (citing *Fireman's Fund,* 65 Cal. App.4th at 1293, 77 Cal.Rptr.2d 296).

In keeping with the fundamental principle that a trial court has discretion to select a method of allocating costs among insurers, the courts have adopted a number of different ways of apportioning the burden among multiple insurers. *Centennial Ins. Co. v. United States Fire Ins. Co.,* 88 Cal.App.4th 105, 112, 105 Cal. Rptr.2d 559 (2001). These methods include the "time on the risk" method, the "policy limits" method, and the "equal shares" method, among others. *Id.* at 112–13, 105 Cal.Rptr.2d 559.

Thus, a trial court has discretion to select a method of allocating litigation defense costs among multiple insurers to produce the most equitable results based on the facts and circumstances of the particular case. *Id.* at 113, 105 Cal.Rptr.2d 559. The court may consider numerous factors in making its determination, including the nature of the underlying claim, the relationship of the insured to the various insurers, the particulars of each policy, and any other equitable considerations. *Axis,* 204 Cal.App.4th at 1231–32, 139 Cal. Rptr.3d 578.

In considering the relationship of the insured to Plaintiff and Defendant, the Court finds that equity requires applying the "equal shares" method to this Action. Plaintiff issued a homeowner's policy to Mr. and Mrs. Chu as the named insureds, who made annual premium payments on that homeowner's policy. Dkt. 18–7. Plaintiff's Policy states that "if a claim is made or a suit is brought against the insured for damages because of bodily injury ... caused by an occurrence to which this coverage applies," Plaintiff will provide a defense. *Id.* at p. 11. Plaintiff's Policy continues, "[o]ur obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability," which is $300,000. *Id.*

In contrast to Plaintiff's Policy, Mrs. Chu is not a specifically named insured under Defendant's Policy. Rather, Defendant issued a Commercial General Liability policy to Temeku Hills as the named insured. Dkt. # 18–8 at p. 2. Defendant's Policy provides a broad range of coverages for a broad range of insureds, including golf pros, tennis pros, members, and users of golfmobiles. *Id.* at p. 41. Thus, Mrs. Chu is afforded coverage not as a named insured, but as an "additional insured" as a golf cart user. *Id.* Because Mrs. Chu is essentially a stranger to the insurance contract between Defendant and Temeku Hills and does not pay premiums toward Defendant's Policy, this supports a finding that the equal shares method is appropriate.

Further, as Defendant notes, when Defendant pays a claim against one of its insureds, the total available policy limits to respond to claims against other insureds will be depleted. The policy is subject to a $2,000,000 General Aggregate Limit which applies to claims against any and all insureds under Defendant's Policy including Temeku Hills itself, its officers and employees, as well as golf pros, tennis pros, and members acting on Temeku Hills' behalf. Dkt. # 18–8 at p. 12,25. By contrast, there is no aggregate limit in Plaintiff's Policy, and therefore, payment of the

settlement in the Underlying Action has no impact on the amount of coverage available to Ms. Chu for other possible liability claims. *See generally* Carande Decl. ¶ 15, Ex. A.

Moreover, the equal shares allocation would be consistent with the language of both policies. The "other insurance" clause in Defendant's main coverage form provides the following:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**c. Method of Sharing**

*If all of the other insurance permits contribution by equal shares, we will follow this method also.* Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

Dkt. # 18–8 at p. 26 (emphasis added). Plaintiff's Policy is otherwise silent as to the methods of sharing with other insurers with respect to personal liability coverage. *See* Dkt. 18–7 at p. 11,17. Thus, by the plain language of the policies, Plaintiff's Policy permits contribution by equal shares. As such, the sharing provisions in Defendant's Policy should be followed. Indeed, Plaintiff fails to address the provision in Defendant's Policy calling for contribution by equal shares. In fact, other than citing cases in which other courts have ordered the insurers to share pro rata by limits, Plaintiff fails to show why allocating costs pro rata by limits would produce the most equitable results based on the facts and circumstances of *this* particular case.

Accordingly, based on the relationship of the mutual insured with Plaintiff and De-fendant, as well as based on the language in Defendant's Policy calling for contribution by equal shares, the Court finds that equal shares is the appropriate method of allocation between the insurers. Because the Court finds that equal shares is the appropriate method of allocation, the Court **GRANTS in part** Defendant's Cross–Motion for Summary Judgment to the extent Defendant requests that the Parties share the defense and settlement costs equally, and **DENIES in part** Plaintiff's Motion for Summary Judgment to the extent it requests the Court to allocate costs pro rata based on the respective policy limits.

Here, Plaintiff paid all of Mrs. Chu's $11,500 defense costs incurred in the Underlying Action. Pl.'s SUF # 7. Further, Plaintiff and Defendant each contributed $100,000 towards the settlement of the Underlying Action. *Id.* at # 20. The Underlying Action was settled for $200,000. *Id.* at # 9. Defendant, in contributing $100,000, has already contributed its correct equitable share towards the settlement of the Underlying Action. Thus, pursuant to the equal shares method, Defendant must only reimburse Plaintiff $5,750—one half of the $11,500 defense costs Plaintiff incurred in the Underlying Action.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part, DENIES in part** Plaintiff's Motion for Summary Judgment and **GRANTS in part, DENIES in part** Defendant's Motion for Summary Judgment. Defendant is **ORDERED** to reimburse Plaintiff $5,750 for costs Plaintiff incurred in defending the Underlying Action.

**IT IS SO ORDERED.**